Sumeer Kakar
Kalpana Nagampalli
KAKAR, P.C.
sk@kakarlaw.net
kalpana@kakarlaw.net
525 Seventh Ave,
Suite 1811
New York, NY 10018
Tel: 212-704-2014
Fax: 646-513-3353
*Attorneys for Plaintiff Claudia Wu*

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Claudia Wu; directly and derivatively on behalf of Cherry Bombe, Inc<br><br>Plaintiff,<br><br>vs.<br><br>Kerry Diamond,<br><br>Defendant,<br><br>Vs.<br><br>Cherry Bombe, Inc<br><br>Nominal Defendant | **Case No:**<br><br><br><br>**COMPLAINT**<br>Jury Demanded |

Plaintiff Claudia Wu ("Wu" or "Plaintiff"), by and through her undersigned attorneys, files this Complaint directly and derivatively on behalf of Cherry Bombe, Inc, against Kerry Diamond

1

("Ms. Diamond" or "Defendant") and Cherry Bombe, Inc ("Bombe" or collectively "Defendants) hereby prays this honorable Court for relief and remedy based on the following:

**Nature of the Dispute**

1. Plaintiff brings this declaratory judgment action for a judgment declaring that she owns a 50% membership interest in Bombe, and Ms. Diamond owns the remaining 50% membership interest in Bombe. Plaintiff also seeks injunctive relief to, *inter alia*, enjoin Ms. Diamond from dissolving, liquidating, transferring, selling the Bombe assets (including certain intellectual property rights and a bank account) and to maintain the status quo.

2. These claims arise from Ms. Diamond's egregious acts of freezing out Ms. Wu, co-founder and co-owner of Bombe, by locking Plaintiff out of Bombe's accounts, blocking and excluding Ms. Wu from creative and editorial decisions, changing and deleting Ms. Wu's email and corporate accounts, Defendant's refusal to respond to Ms. Wu's requests for corporate accounting, and finally terminating Ms. Wu on Bombe's payroll and denying access to the decisions regarding the upcoming volume of Bombe's publication.

3. This action arises out of Defendants' breaches of their fiduciary duties, their breaches of fair dealing, and their misappropriation of Ms. Wu's intellectual property, all while acting in their self-interest and to the detriment of Ms. Wu's ownership interests in Bombe. Defendants have engaged in their misconduct in a misguided effort to seize control of Bombe, and to try to exercise leverage over Ms. Wu in an effort to buyout her interests, without regard to their strategy's detrimental effect on the Bombe brand and subscriber base.

4. In particular, seeking to further their own interests, Defendants engineered a "business divorce" and immediately embarked on a freeze-out process designed to strengthen their negotiation position in discussions concerning a potential buyout of Ms. Wu. Defendants executed this strategy despite knowing that it would paralyze Bombe's business and publications operations, cause existing Bombe publication to be delayed and behind schedule.

5. This is a civil action for (a) declaratory judgment pursuant to the Declaratory Judgments Act, 18 U.S.C. §§ 2201 and 2202;(b) declaratory judgment pursuant to the Lanham Act for trademark infringement. Enjoining the Defendants from assigning, transferring, selling, licensing, pledging, encumbering or otherwise disposing of Cherry Bombe's assets, including without limitation Bombe's bank account and intellectual property; (c) breach of contract and breach of the implied covenant of good faith and fair dealing pursuant to New York state law; (c) breach of fiduciary duties pursuant to New York state law; (d) an action for an accounting pursuant to federal and New York state law; and (e) attorneys' fees and costs pursuant to applicable law.

### Parties

6. Plaintiff Claudia Wu is the 50% co-owner and co-founder of Cherry Bombe, and she resides and has her principal place of business in the State of New York.

7. Defendant Kerry Diamond is also a 50% co-owner and co-founder of Bombe, and she resides and has her principal place of business at 505 Court Street, Brooklyn, New York 11231.

8. Nominal Defendant Cherry Bombe is a corporation organized and existing under the laws of the State of New York and lists its corporate address as 505 Court Street,

Brooklyn, New York 11231 with New York State Division of Corporations but currently has its principal place of business at 345 Smith Street, Brooklyn, New York 11231.

**Jurisdiction and Venue**

9. This is a civil action seeking declaratory relief under the Declaratory Judgments Act, 18 U.S.C. §§ 2201 and 2202. Accordingly, this Court has subject matter jurisdiction over the foregoing claims pursuant to 28 U.S.C. §§ 1331.

10. This Court has jurisdiction under Section 39 of the Lanham Act 15 U.S.C. § 1121, and under Sections 1331 and 1339(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and (b), and under principles of pendent jurisdiction. This Court has supplemental jurisdiction over Plaintiff's claims arising under New York state law because said claims arise out of the same case or controversy for which, as set forth herein.

11. This Court has personal jurisdiction over Defendants because they reside in, and are thus physically present in, the State of New York and this Judicial District and do business in New York and this Judicial District. See N.Y. C.P.L.R. § 301.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**Facts Common to All Claims of Relief**

13. Bombe is a biannual food magazine co-founded and co-owned by Plaintiff and Ms. Diamond that celebrates women and food, and Bombe features a variety of cultures, cuisines and voices in the food industry including chefs and servers, food stylists and scientists, culinary icons and up-and-coming entrepreneurs.

14. Bombe is a high-end food magazine that has garnered fame and is widely known for their beautifully designed magazines, podcasts, cookbooks, celebrity and press endorsements, and has a notable social media following.

15. Ms. Wu is a creative consultant and designer with more than two decades of experience and history in creating award-winning editorials for several well-known publications. She has worked and freelanced at fashion and news publications such as the *Visionaire*, the *V*, *Harper's Bazaar*, and the *New York Times* Sunday Magazine, *Bon Appetite,* and the *T Magazine*.

16. Before joining Bombe, from 2004-2012, Ms. Wu founded her own design and creative consulting firm called the "Orphan", and her clients included an impressive roster of big brands such as *Hugo Boss*, *NARS*, *Clinique*, *New Museum*, *Organic Avenue*, and *Intermix*, and many others. During this time, Ms. Wu also created and published a print magazine called the *Me Magazine* that featured dedicated editorials and stories about creative individual in the fashion, art, and media industry.

17. Plaintiff and Ms. Diamond worked together at *Harper's Bazar*.

18. In 2012, Ms. Diamond reconnected with Ms. Wu to discuss projects and explore collaborative opportunities.

19. Ms. Diamond owned and ran the restaurants, "Seersucker" and "Nightingale 9", and a coffee shop called "Smith Canteen", all located in Carrol Gardens, Brooklyn, New York, and wanted to work with Ms. Wu on a restaurant publication.

20. After several meetings and conversations, their mutual interest in food and fashion evolved into creating a food magazine that focused on highlighting women in food and restaurant industry.

21. Ms. Wu created the logo, visual style for the website, layout and stylized "Cherry Bombe" as the name for the magazine, and later created the name "CherryBombe Jubilee", the visual style, design and stylized the logo for it.

22. Plaintiff is the duly registered owner of the United States Registration Nos. 5,399,932, 5,328,544, and 5,328,546 for the following marks "CherryBombe", "CherryBombe Jubilee", and the stylized logo for "CherryBomb Jubilee." ("Bombe Trademarks") A true and correct copy of Plaintiff's trademark registrations is attached hereto as Exhibit A.

23. In early 2013, Plaintiff and Ms. Diamond launched a Kickstarter campaign to raise funds for their first Bombe publication and raised $42,000.

24. In or about March 2013, Plaintiff and Ms. Wu incorporated Cherry Bombe as co-founders.

25. However, no formal written operating agreement was entered into, or executed by the co-owners and co-founders at the time of Bombe's incorporation.

26. After Bombe's incorporation, Ms. Wu scaled down on her other professional projects and devoted her time exclusively to handling the day-to-day operations of Bombe's branding, creation, publication, content development, packaging, shipping and distribution.

27. During the time of Bombe's development and launch, Ms. Diamond continued to work full-time as the Vice President of Public Relations for Coach, attended to managing her restaurants, and soon after Bombe's launch she started working full time as an Editor, at Yahoo Food.

28. Ms. Diamond relied on Ms. Wu's expertise in creating, publishing, and distribution of magazines.

29. Since its 2013 inception, Bombe grew dramatically despite the decline in print publications. In only five years, the company launched a print publication, started hosting weekly podcasts, organizing annual food conferences, and publishing a cookbook.

30. Bombe received a lot of press that featured its co-owners and co-founders on several leading publications such as the *New York Times, Vogue*, *InStyle*, *Nylon, Domino*, *Fast Company*, and other notable food publications.

31. After Bombe's first publication in 2013, it has published ten volumes featuring several celebrity food entrepreneurs such as Karlie Kloss, Erin McKenna, Padma Lakshmi, Chef Kristen Kish, Chrissy Teigen, Martha Stewart, Alice Waters. Dominique Crenn, Chef April Bloomfield, and many other chefs and restaurant owners.

32. Bombe's social media presence on Instagram attracted many followers, sponsors, and product endorsements that led to the creation of the Instagram handle "#Bombesquad" for followers of Bombe's social media pages.

33. Bombe's quickly growing fame and following led to the launch of the magazine's podcast called "Radio Cherry Bombe", on Heritage Radio Network.

34. Ms. Wu and Defendant interviewed well-known celebrities on Radio Cherry Bombe and the shows format revolved around conversation with the bakers, pastry chefs, stylists, writers, cookbook authors, and others.

35. In 2014, Bombe held its first annual all-day conference called "Cherry Bombe Jubilee" dedicated to talks and seminars related food and women in the food industry.

36. Ms. Wu created and developed the stylized logos and branding for Cherry Bombe Jubilee that prominently featured "Jubilee" in a stylized script that is Ms. Wu's hand

writing. In connection with "Radio CherryBombe", Ms. Wu also created the logo and used her handwriting as the stylized script for the logo.

37. As Bombe started to grow and expand, Ms. Wu took on responsibilities in advertising sales, printing, publication, distribution and developing creative content, along with managing subscriptions, and relationships with Barnes and Nobles, American Express, and Whole Foods.

38. By 2016, Clarkson Potter, a lifestyle group within the publishing company Penguin Random House, approached Ms. Wu and Ms. Diamond and offered them a two-cookbook deal, that would be published as two volumes entitled "Cherry Bombe Cookbook" and "Cherry Bombe Cookbook #2" by Kerry Diamond, Claudia Wu, the Editors of Cherry Bombe.

39. Ms. Wu and Ms. Diamond both signed the agreement as co-founders and committed to a two-volume cookbook

40. By 2016, however, Ms. Wu and Defendant started to have significant differences and friction with respect to Bombe's revenue and day-to-day operations.

41. Ms. Diamond began to consistently bar Ms. Wu from business and creative decisions.

42. Ms. Diamond stopped communicating and would not respond to Ms. Wu's email communications regarding Plaintiff's exclusion from meetings and interviews.

43. For instance, without consulting Ms. Wu, Defendant terminated a long-term relationship with a Hong Kong printer that had been working with Plaintiff before she joined Bombe.

44. When Ms. Wu demanded an explanation, Ms. Diamond said that she was managing shipment time and had found a domestic printing company that matched the Hong Kong

prices.

45. However, Ms. Wu discovered that domestic printing company charges were more than $17,000 and they had never offered to agree to the Hong Kong printing prices.

46. Not only did Ms. Diamond's actions cost Bombe several thousands of dollars in excess for printing charges but it led to a three-week delay in delivering and shipment to subscribed customers.

47. From switching printers that delayed publication and shipments, and seeking full-creative and editorial control on Bombe, Ms. Diamond started to systematically exclude Ms. Wu from business decisions.

48. In or about early 2016, Ms. Wu made several attempts by sending emails to Ms. Diamond regarding a formal operating agreement and to revisit the structure. Ms. Wu also raised the issue of the systematic exclusion from meeting and communications related to Bombe.

49. On several occasions, Ms. Wu also objected to certain personal expenses that Ms. Diamond charged to the corporate credit card: designer clothes for events, airfare to Washington, D.C., personal trip to Ireland and expensive conference tickets that cost more than $3000, and other personal charges.

50. After Ms. Wu questioned the personal charges to Bombe's corporate account, Ms. Wu was denied access to review corporate accounts.

51. For instance, Ms. Diamond without informing Ms. Wu placed a limit of $200 on the corporate credit card, which directly caused Cherry Bombe's website to go down because Ms. Wu's corporate card was connected to pay for the website service.

52. In addition, Ms. Diamond made inconsistent and unexplained withdrawals from Bombe's corporate accounts, and refused to account for the withdrawals.

53. As the deadlock between Ms. Wu and Ms. Diamond escalated, it created significant problems with proper functioning of the business.

54. In order to resolve the issues, Ms. Wu suggested they use a mediator to work-out a mutually agreeable ownership structure for Bombe.

55. After several attempts by Ms. Wu, Ms. Diamond agreed to call the mediator to set-up a meeting but the meeting never took place.

56. Ms. Wu attempted to negotiate the terms of a formal agreement between them to protect the business and future of Bombe.

57. Ms. Wu retained an attorney to negotiate the terms of settlement and structure a mutually amicable business arrangement for the growth and success of Bombe but these negotiations did not lead to a solution.

58. Ms. Wu sent several settlement proposals to Ms. Diamond that would allow them to run Bombe together and coexist but these offers have been either refused or Ms. Diamond responded with offers to buyout Ms. Wu on unacceptable terms and has suggested she may dissolve the corporation.

59. In the meantime, Ms. Wu worked on the Cherry Bombe Jubilee held in New York on April 14, 2018 and continued to create, contribute and, organize the day-long conference by dealing with vendors, attendees, sponsors, and panelists.

60. Soon thereafter, on May 2, 2018, Ms. Wu discovered that Ms. Diamond deleted Ms. Wu's Bombe email account, and terminated her access to the Bombe website and social media. Thereafter, without notice and any communication, Ms. Diamond terminated Ms. Wu from payroll.

61. Upon information and belief, Ms. Diamond has continued to make several corporate decisions as to publications, printers, and is moving forward with publication of new issue of Bombe.

62. Upon information and belief, Ms. Diamond is publishing the new issue of Bombe and excluding Ms. Wu as the co-founder and creative director of the publication.

63. As the co-creator and co-founder of Bombe, Ms. Wu has extensively contributed to the growth of Bombe by creating beautiful editorials, delivered original content, managed the publication and distribution of Bombe. With her experience and connections in the industry, Ms. Wu constantly found new ideas for Bombe and sought to develop marketing opportunities for the growth of the company.

64. In addition, Ms. Wu has rights in the goodwill created by Bombe magazines, Bombe magazine revenue, accounting of Cherry Bombe Cookbook revenues, social media, monies generated from sales of company merchandise, and other tangible and intangible assets of the corporation.

65. The foregoing assets collectively are extremely valuable, especially the intellectual property. However, at this juncture it is difficult, if not impossible, to assign a dollar without corporate accounting and valuation.

66. Defendants' misappropriation of Bombe Trademarks threatens to irreparably damage its hard-earned reputation and goodwill. Bombe's business relies on the goodwill of sponsors, subscribers and lenders who are overwhelmingly sensitive to reputation and brand identity.

67. Defendants' unlawful use of Bombe's intellectual property irreparably alters the market's perception of Bombe because customers will be confused as to whether: (i)

Bombe has a stable management structure; and (ii) Ms. Wu is involved in Bombe's publications as the co-founder and co-owner of the Bombe.

68. Ms. Diamond's barring and termination of Ms. Wu's email and web access to Bombe is a deliberate attempt to reap all the rewards and benefits from Bombe's growth and revenue, and none of this could exist without Ms. Wu's 50% contributions to Bombe.

69. Similarly, if Defendants are permitted to continue to use Bombe Trademarks, Bombe will have no ability to control its reputation. Indeed, Ms. Wu will not be able to ensure that Defendants will maintain the level of professionalism and relative success that Bombe has enjoyed with Ms. Wu's leadership.

## First Cause of Action
### (Declaratory Judgment of Trademark Infringement- Derivative)

70. Plaintiff realleges and incorporates by reference Paragraphs 1 through 166 as though fully set forth herein.

71. This cause of action arises under the under 28 U.S.C. § 2201 and the Lanham Act, 15 U.S.C. § 1051et seq.

72. As indicated above, upon information and belief, after Plaintiffs termination, Defendant has continued to use the Bombe trademark without authorization, license or consent of Ms. Wu, and is moving forward with next issue of Bombe without crediting Ms. Wu as the co-owner and co-founder.

73. By virtue of the Ms. Diamond's actions, Ms. Wu has a reasonable apprehension that Bombe's customers are likely to be confused by Ms. Diamond's continued and unauthorized use of the Bombe Trademarks.

74. Ms. Wu has a reasonable apprehension that Ms. Diamond's use of the Bombe Trademarks is likely to cause confusion, mistake, or to deceive the Bombe's

customers as to the affiliation, connection, or association of Ms. Diamond as the sole owner.

75. Ms. Wu has a reasonable apprehension that Ms. Diamond's continued use of the Bombe Trademarks is likely to cause confusion, mistake, or to deceive customers as to the origin, sponsorship, or approval of Bombe.

76. By virtue of the foregoing, an actual controversy exists between Ms. Wu and Ms. Diamond regarding whether Ms. Diamond's announced actions to move forward with publication of the next issue of Bombe will infringe the Bombe Trademarks, or any of them.

77. Ms. Wu is entitled to a declaration that Ms. Diamond's announced actions will infringe the Bombe Trademarks.

78. Upon information and belief, by such wrongful acts, Defendants have caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to Bombe and to the goodwill associated with the "Bombe" name. Plaintiff is without an adequate remedy at law.

## SECOND CAUSE OF ACTION
**(Infringement Under N.Y. Gen. Bus. Law § 360-k – Derivative)**

79. Plaintiff re-alleges each allegation contained herein.

80. Defendants' aforementioned acts constitute an infringement of Plaintiff's trademark under the N.Y. Gen. Bus. Law § 360-k.

81. Upon information and belief, by such wrongful acts, Defendants have caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to Bombe and to the goodwill associated with the "Bombe" name. Bombe is without an adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Declaratory Judgement of Ms. Wu's 50% Ownership- Direct)

82. Plaintiff's foregoing paragraphs are incorporated herein by reference.

83. There is a justiciable controversy between the parties as to Ms. Wu's ownership interest in Bombe.

84. Ms. Wu is the co-founder and co-owner of Bombe, and owns 50% ownership interest in the company.

85. Despite several documentary evidences under Ms. Diamond's control, Ms. Diamond denies that Ms. Wu has 50% ownership interest in the company and its assets.

86. Accordingly, Plaintiff seeks a Declaratory Judgment declaration that Ms. Wu and Ms. Diamond have a 50% ownership interests pursuant to documentary evidence within the custody and control of Defendants;

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duties – Derivative)

87. Plaintiff re-alleges each allegation contained herein.

88. As owners and managers of Bombe, Defendants owe to Ms. Wu, the fiduciary duties of due care, loyalty and good faith.

89. Defendants breached their fiduciary duties through their conduct described herein, including freezing-out Plaintiffs from Bombe operations, misappropriating Bombe's intellectual property, and failing to exercise any diligence in resolving disputes without locking out a co-founder and co-owner.

90. Defendants' bad faith and ulterior motives drove their misconduct and wrongdoing. In addition, their wrongdoing was the product of their willful or, at the very least, grossly negligent misconduct.

91. Defendants' conduct was an unreasonable exercise of their fiduciary duties and breached those duties. Such breach has caused damage to Plaintiffs, and threatens to cause irreparable harm to the same.

**FIFTH CAUSE OF ACTION**
**(Breach of Fiduciary Duties – Direct)**

92. Plaintiff re-alleges each allegation contained herein.

93. As members and owners of Bombe, Kerry Diamond had control power over Bombe, Defendants owe to Ms. Wu, the fiduciary duties of due care, loyalty and good faith.

94. Defendants failed to act in regard to Ms. Wu, in good faith and with the degree of responsibility required from fiduciaries.

95. Defendants' bad faith and ulterior motives drove their wrongdoing which was the product of their willful or, at the very least, grossly negligent misconduct.

96. Defendants' conduct in this regard was an unreasonable exercise of their fiduciary duties and a breach of those duties. Such breach has caused damage to and threatens irreparable harm to Ms. Wu.

**SIXTH CAUSE OF ACTION**
**(Accounts Stated-Derivative)**

97. Plaintiffs repeat and reallege paragraphs 1 through 96.

98. Plaintiffs and Defendants have engaged in a series of prior transactions underwritten by the understandings, covenants, promises and agreements between the parties, as described herein.

15

99. The account stated in these prior transactions, understandings, covenants, promises and/or agreements, set forth an irrevocable and enforceable promise from Defendants to Plaintiffs for the payment and transfer of monies, funds and/or other monetary benefit or gain duly owed to Plaintiffs as per said prior transactions, understandings, covenants, and/or agreements.

100. As set forth herein, despite repeated requests, Defendants have refused to provide any information or proper accounting to Plaintiffs for his share of monies or from the exploitation of the Bombe Trademarks and goodwill. Accordingly, Plaintiffs are entitled to an accounting of all consideration Defendants' have received regarding Ms. Wu's share of monies from the exploitation of the goodwill, revenue and expenses arising from above stated transactions.

101. Plaintiffs accordingly seek damages in an amount to be proven at trial for the account stated as discussed herein. On information and belief, Defendants' have caused irreparable harm to Plaintiffs.

102.

WHEREFORE, Plaintiff, individually and derivatively, demands the entry of a judgment:

1. Preliminarily enjoining Defendants' publications of Cherry Bombe publications without acknowledgement of Plaintiffs ownership.

2. Awarding to Nominal Defendants and Plaintiff Wu damages, in an amount to be determined at trial on Counts I through V;

3. Granting preliminary and permanent injunctive relief under 15 U.S.C. § 1116 restraining and permanently enjoining Defendants and all of their agents, representatives, employees, attorneys, assigns and successors in

interest, and all other persons acting in concert with them, from using any names, words, designations, or symbols which are confusingly similar to, or which colorably imitate, any Bombe Trademarks, or which are likely to cause confusion or mistake in the mind of the public or to deceive the public into the belief that Defendants' commercial operations are in any way associated with or related to Bombe;

4. Declaring that Plaintiff Claudia Wu has 50% membership interest in Cherry Bombe, Inc;

5. Enjoining the Defendants from dissolving, assigning, transferring, selling, licensing, pledging, encumbering or otherwise disposing Cherry Bombe, Inc's assets.

6. Directing that Defendants be ordered to pay Plaintiff's reasonable attorneys' fees, costs and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and New York General Business Law § 360-l;

7. Awarding Plaintiff pre-judgment and post-judgment interest to the maximum extent provided by law;

8. Awarding to Nominal Defendants and Plaintiff Wu all costs and fees incurred in connection with this action including reasonable attorneys' fees; and

9. Awarding all such other and further relief as the Court deems appropriate.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial plus interest as allowed by law, costs, disbursements, attorneys' fees, and all other relief that this Court deems just and proper.

Date: July 2, 2018
New York, New York

<u>**/s/** Kalpana Nagampalli</u>
Sumeer Kakar, Esq.
Kalpana Nagampalli, Esq.
**KAKAR, P.C.**
525 Seventh Avenue, Suite 1811
New York, NY 10018
(212) 704-2014
sk@kakarlaw.net
*Attorney for Plaintiff Claudia Wu*
